GREENBERG v. FIREMEN'S INS. CO.

(Supreme Court, Appellate Term, First Department.  June 26, 1916.)

1. INSURANCE ⬥665(4)—FIRE INSURANCE—VALUE OF STOCK—SUFFICIENCY OF EVIDENCE.

In an action for a fire loss by a candy dealer, evidence *held* insufficient to support finding that plaintiff's stock of goods before the fire was worth only $300.

[Ed. Note.—For other cases, see Insurance, Cent. Dig. § 1722; Dec. Dig. ⬥665(4).]

2. INSURANCE ⬥646(2)—FIRE INSURANCE—FRAUD—BURDEN OF PROOF.

In an action for a fire loss, the burden of proving fraud is upon the insurer.

[Ed. Note.—For other cases, see Insurance, Cent. Dig. §§ 1650–1652, 1654–1656; Dec. Dig. ⬥646(2).]

Appeal from Municipal Court, Borough of Manhattan, First District.

Action by Abraham Greenberg against the Firemen's Insurance Company. From a judgment dismissing plaintiff's complaint on the merits, plaintiff appeals. Judgment reversed, and new trial granted.

Argued June term, 1916, before GUY, BIJUR, and PHILBIN, JJ.

Kaufman & Gisnet, of New York City (Michael Kaufman, of New York City, of counsel), for appellant.

S. J. Rosenblum, of New York City (Wm. A. Walling, of New York City, of counsel), for respondent.

BIJUR, J. Plaintiff sues for a fire loss under defendant's policy of insurance for $500. Plaintiff, a candy dealer, testified that by a fire in his premises he sustained a total loss of his entire stock (less about $20 worth), valued by him at $1,800. He held two policies of insurance, of $500 each, and claimed from each company the full amount of the policy. Plaintiff's adjuster, called as a witness by him (solely on the point that the proof of loss had been prepared and filed, and as to conversations about a possible adjustment of the claim), testified on cross-examination as follows:

"Q. Did you see this débris or trash in the premises? A. I did. Q. And from your knowledge as an adjuster of fire losses of 20 years' standing, what would you say was the value of the merchandise out of sight and in this paper, in this débris—what it amounted to? A. To the best of my knowledge, it would not amount to $1,800. Q. How much would it amount to, to the best of your knowledge? A. I seen there some of the ceiling was down—

---

⬥For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

There was a fire in the place— Q. No; how much, to the best of your knowledge, would that débris amount to? A. Probably $300 or $400. The Court: Three or four hundred dollars, he says. Q. Is that the utmost? A, To the best of my knowledge."

When questioned about the proof of loss, he said:

"I told the assured to make up his own schedules of total loss and missing, because he said he had that there. I did not see his place before the fire. * * * Mr. Fryer [defendant's adjuster] asked me who made that schedule, and I told him that that is the assured's own schedule of the total loss and missing. Q. Did you tell him that you would not assume responsibility, nor would you certify to the correctness of the amount? A. I did tell that to Mr. Fryer at the meeting."

Fryer, the defendant's adjuster, testified:

"Q. What, in your opinion, was the value of the property which went to make up this débris and which is described as out of sight? A. Possibly $300."

On cross-examination he said:

"Q. When you say this débris of the loss was $300, that is a rough guess, isn't it? A. Not so very rough. * * * Q. You know, as a matter of fact, that candies—they are made out of sugar and chocolate? A. Yes, sir. Q. And they melt? A. Yes, sir. Q. And do you mean to say that you could tell, after a complete loss, how much the value of the stock was prior to the fire? A. *I said approximately.*"

There was some evidence to the effect that the witness was the only adjuster for both companies, and that the other company had paid $450. He was asked on cross-examination:

"Q. You never instructed the Ben Franklin Company to pay $450, did you? A. I do not know whether I did or not. Q. Will you swear that you did not? A. No."

The witness later explained that:

"We often overpay losses very much against our will. Q. Is it possible you overpaid here? A. I know it. * * * We buy our peace."

It is not clear what the basis of the learned court's judgment dismissing plaintiff's complaint on the merits may have been, because defendant did not move, either at the close of plaintiff's case or of the whole case, for an affirmative judgment on the ground of fraud, but only to dismiss the complaint on the ground that plaintiff had failed to prove facts sufficient to constitute a cause of action.

There was some dispute as to whether plaintiff had filed a proof of loss within the time required by the policy or at all. Whether that item entered into defendant's counsel's consideration in moving to dismiss cannot be determined from this record.

[1, 2] Laying aside, however, any technical question involved in the ground of the motion for a dismissal, I do not think that the record presents sufficient proof to support a finding of fact that plaintiff's stock of goods before the fire was worth only $300, and there is no evidence, other than the disparity between that amount and plaintiff's claim, upon which to base a finding of fraud. The stock was of a character admittedly subject to total destruction. The débris, therefore, at the best would not represent more than a part of the stock. The opinion of both adjusters is so qualified as to make it highly un-

satisfactory. Since the burden of proving fraud was on the defendant, the absence of testimony based on plaintiff's inventory and proof of loss in detail, all of which was manifestly available is to say the least, highly significant.

Plaintiff should not be subjected to forfeiture of all claim for loss upon testimony so vague, but both sides should have an opportunity to litigate upon adequate and appropriate proofs an issue of this importance.

Judgment reversed, and new trial granted, with $30 costs to appellant to abide the event. All concur.